IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-03011-01-CR-S-BCW |
| MICHAEL L. MURRAY, | |
| Defendant. | |

## REPORT & RECOMMENDATION

Before the Court is the Motion for Suppression of Physical Evidence and Statements filed by Defendant. (Doc. 18.) This action has been referred to the undersigned for preliminary review. Defendant moves to suppress "all evidence seized, and all statements made by [Defendant] during and following his unlawful seizure and detention, warrantless arrest, and warrantless search and seizure of his personal property on April 14, 2021, in Springfield, Greene County, Missouri." *Id*. The Government filed suggestions in opposition to the motion. (Doc. 22.)

An evidentiary hearing was held on June 2, 2022. (Doc 24.) Defendant appeared with his attorney, David R. Mercer, and the Government was represented by Special Assistant United States Attorney Cameron A. Beaver. Gregory Tiller testified on behalf of the Government. (Doc. 26 at 3.) As follows, it is **RECOMMENDED** that the motion be **DENIED**.

**I.  Findings of Fact**[1]

Since 2017, Gregory Tiller has worked as a detective in the Criminal Investigation Division of the Greene County Sheriff's Office ("GCSO"). (Doc. 26 at 4.) He is also assigned to the FBI's

---

[1] The facts set forth are taken from the testimony adduced and the exhibits admitted, without objection, at the hearing on the Motion. See Transcript (doc. 26) and Exhibit Index (doc. 25).

1

Career Criminal Task Force. *Id*. Prior to becoming a detective, he worked as a patrol officer in the GCSO for approximately five years and has almost 13 years of law enforcement experience in total. *Id*. As a patrol officer, Det. Tiller responded to calls for service, conducted proactive patrolling, and enforced traffic laws. *Id*. at 5-6. Det. Tiller has received training on firearms, firearm safety, and general officer safety. *Id*. at 6.

On April 14, 2021, Det. Tiller was conducting traffic enforcement by himself as a part of a MODOT-funded grant to promote safe driving. *Id*. at 6-7. At approximately 7:58 p.m., Det. Tiller noticed a Dodge Ram truck with a non-functioning brake light, in violation of Missouri law, and conducted a traffic stop of the truck in the area of Glenn and Hovey in Springfield, Missouri. *Id*. at 7-8, 26. This is a higher crime area, and at 7:58 p.m., it was dusk, "nearing dark, but you could still see a little bit." *Id*. at 9.

Det. Tiller approached the truck and made contact with two individuals, the driver and a passenger, Defendant. *Id*. at 9-10. Det. Tiller requested identification from both individuals. *Id*. Neither had identification, but both provided their names to Det. Tiller. *Id*. at 10-11. Det. Tiller returned to his vehicle and ran their names through MULES, which revealed that the driver had a revoked driver license. *Id*. at 11. However, Det. Tiller was unable to confirm Defendant's identity because his name is common, and the initial MULES search yielded 17 entries. *Id*. In order to obtain more identifying information from Defendant, Det. Tiller walked back to the passenger side of the truck. *Id*. at 12. Det. Tiller did not plan on releasing the driver from the traffic stop yet. *Id*.

Upon his return to the passenger side of the truck, Det. Tiller saw that Defendant was about 30 yards away and continuing to walk away from the traffic stop. *Id*. at 13, 32. Det. Tiller considered this to be "very unusual" and "concerning" behavior. *Id*. at 13. Det. Tiller was concerned because his attention was now divided between Defendant and the driver, which

2

presented an officer safety issue. *Id*. Det. Tiller also observed Defendant was wearing a backpack, and he did not know if anything was in the backpack that could harm him. *Id*. at 14, 43. Det. Tiller then "called" Defendant to return to the truck, to which Defendant complied. *Id*. at 14, 45.

When Defendant returned to the truck, Det. Tiller removed the backpack from his person and conducted a pat-down search of him. *Id*. Det. Tiller did so due to concerns for his safety based on Defendant's leaving of the stop, the time of day, the location of the stop, and the need to also watch the driver of the truck. *Id*. After the pat-down, Det. Tiller placed Defendant in handcuffs for officer safety. *Id*. at 14-15, 41-42. Det. Tiller also placed the backpack in front of his vehicle, to prevent Defendant from accessing it in case there was a weapon in it. *Id*. at 15. Then, Det. Tiller put Defendant in the front passenger seat of his vehicle. *Id*. at 15-16. At this point, the time was 8:07 p.m., approximately nine minutes after the truck was stopped. *Id*. at 15.

Inside his vehicle, Det. Tiller asked Defendant for his social security number, which Defendant provided. *Id*. at 16-17, 42. With this additional information, at approximately 8:08 p.m., Det. Tiller learned via MULES that there was a warrant for Defendant's arrest, stemming from a parole violation in a possession of a controlled substance conviction. *Id*. at 17 and 46. Det. Tiller then contacted dispatch, who confirmed the warrant was still active. *Id*. at 17-18. With this information, Det. Tiller advised Defendant that he was being arrested for the active warrant at 8:14 p.m., approximately 16 minutes after the traffic stop began. *Id*. at 18. Det. Tiller also asked Defendant "if there were any weapons or anything illegal in the backpack." *Id*. Defendant informed Det. Tiller that there was a firearm in the backpack, and with that information Det. Tiller put the backpack in the trunk of his vehicle to prevent Defendant from accessing it. *Id*. at 19-20. Det. Tiller then returned to the truck and informed the driver, for the first time, that he was free to leave but could not drive because he did not have a valid driver license. *Id*. at 21. Det. Tiller left the scene

3

to transport Defendant to the Greene County Jail approximately 20 minutes after the initial traffic stop began. *Id.* at 23.

Upon arrival at the Greene County Jail, Det. Tiller read Defendant his *Miranda* rights; Defendant did not indicate in any way that he did not understand his *Miranda* rights or that he was not speaking to Det. Tiller voluntarily. *Id.* at 23-24, 39-40. Defendant stated that he knew he likely had a warrant for his arrest when he walked away from the traffic stop. *Id.* at 24. Defendant further stated that he purchased the firearm at an auction house for cash. *Id.* Defendant also said he knew he could not own a gun but believed he could have "access" to a firearm if it was not in anyone's name. *Id.* at 25. Following the interview, Det. Tiller searched Defendant's backpack because the Greene County Jail requires inventory searches of all personal possessions of suspects booked into the jail and also prohibits weapons and contraband within the facility. *Id.* at 25-26.

## II. Conclusions of Law

In the Motion, Defendant raises several arguments for the suppression of "all evidence seized, and all statements made by [Defendant] during and following his unlawful seizure and detention, warrantless arrest, and warrantless search and seizure of his personal property on April 14, 2021, in Springfield, Greene County, Missouri." Specifically, Defendant asserts that Det. Tiller went beyond the task associated with the traffic violations related to the stop and violated Defendant's Fourth Amendment rights to be free of unreasonable searches and seizures. (Doc. 18. at 3.) Defendant also argues that Det. Tiller failed to provide *Miranda* warnings before questioning him, in violation of his Fifth Amendment right against self-incrimination. *Id.* at 8. The undersigned takes up the arguments below.

## A. The Traffic Stop was not Unreasonably Prolonged.

American citizens are protected from unreasonable seizures by the Fourth Amendment. U.S. Const. amend. IV. During a lawful traffic stop both a driver and a passenger are seized. *Waters v. Madson*, 921 F.3d 725, 739 (8th Cir. 2019). A "traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington,* 455 F.3d 824, 826 (8th Cir. 2006). Minor traffic violations provide probable cause for traffic stops. *United States v. Green*, 946 F.3d 433, 438 (8th Cir. 2019) (citing *United States v. Harris*, 617 F.3d 977, 979 (8th Cir. 2010)).

However, "[a] seizure justified only by a traffic violation, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket." *Rodriguez v. United States*, 575 U.S. 348, 350-51(2007). During a traffic stop, "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to [the traffic] stop." *Id*. at 355 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)) (cleaned up). These ordinary inquiries may include "routine tasks [such as] asking a passenger for identification and running a computer check if the passenger consents to the request for identification." *United States v. Cloud*, 594 F.3d 1042, 1044 (8th Cir. 2010) (citing *United States v. Slater*, 411 F.3d 1003, 1006 (8th Cir.2005)). Detention may be prolonged for a reasonable time if difficulties arise in checking identification. *Cloud*, 594 F.3d at 1045 (citing *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008)). Additionally, if the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion. *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2008).

Also, during a traffic stop, a reasonable passenger understands they are not free to end the encounter with officers and leave. *Arizona v. Johnson*, 555 U.S. 323 (2009). As such, a

5

passenger's flight during a traffic stop creates reasonable suspicion. See *United States v. Hightower*, 716 F.3d 1117, 1121 (8th Cir. 2013) (attempting to flee an encounter with police creates reasonable suspicion to support an investigatory stop). Further, if officers discover that an individual has a warrant for their arrest, there is sufficient justification to further detain that individual to confirm if the warrant is still active. *United States v. Steffens*, 418 F. Supp. 3d 337, 365 (N.D. Iowa 2019), aff'd sub nom. *United States v. Lillich*, 6 F.4th 869 (8th Cir. 2021); *see United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1998) (finding that a 20-minute detention while verifying if a warrant was active did not violate the Fourth Amendment).

Additionally, there is a weighty public interest in protecting officers during traffic stops. *Maryland v. Wilson*, 519 U.S. 408, 413 (1997). This interest is present when officers interact with a vehicle's driver or passenger. *Id.* And, if there are multiple occupants of a vehicle, the possible sources of harm to an officer increase. *Id*. To counter the hazards faced during traffic stops, officers are allowed to utilize "negligibly burdensome precautions" to complete the stop safely. *Rodriguez*, 575 U.S. at 354. Pat-down searches for weapons are "minimally intrusive" compared to the hazards faced by officers during traffic encounters. *United States v. Menard,* 95 F.3d 9, 11 (8th Cir. 1996). A protective search will be held valid "if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous." *United States v. Plummer*, 409 F.3d 906, 909 (8th Cir. 2005). Handcuffing a passenger and placing them in an officer's vehicle for safety reasons and to control the scene is also reasonable during a traffic stop. *United States v. Navarrete-Barron*, 192 F.3d 786, 790-91 (8th Cir. 1999).

The court should also consider whether an officer acted diligently when conducting an investigation. *Williams v. Decker*, 767 F.3d 734, 741 (8th Cir. 2014). However, there is no rigid

6

amount of time in which an officer must complete an investigation. *Id*. (citing *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir.2005)).

In this matter, contrary to Defendant's arguments, the undersigned concludes that the traffic stop conducted on April 14, 2021, was not unreasonably prolonged or extended. As follows, the record reflects that Det. Tiller conducted ordinary investigative inquiries throughout the stop, took reasonable measures related to his safety, and acted diligently at all times during the stop, which was relatively brief in total.

The stop began at 7:58 p.m. when Det. Tiller made contact with the driver and Defendant. (Doc. 26 at 7-9.) Upon making contact, Det. Tiller requested their identification, an ordinary inquiry incident to a traffic stop. *See Cloud*, 594 F.3d at 1044-45. When Det. Tiller ran their names through MULES, he determined that the driver had a revoked license. (Doc. 26 at 11.) However, Det. Tiller was unable to identify Defendant because his is a common name and multiple results were yielded in the MULES search, so he returned to the truck to obtain additional identifying information from Defendant, also an ordinary inquiry in a traffic stop. *See Cloud*, 594 F.3d at 1044-45 (finding if complications arise when identifying the passenger, the officer may reasonably prolong their detention to identify them). When he returned to the passenger side of the truck, Det. Tiller observed Defendant walking away from the traffic stop. (Doc. 26 at 13.)

At this point, the traffic stop was not over as Defendant contends, because Det. Tiller was justified in further detaining Defendant to identify him after he attempted to walk away. Also, Det. Tiller had not yet issued any citation to the driver.

Because Det. Tiller had not yet identified Defendant as part of the ordinary inquiry, he directed Defendant to return to the truck. (Doc. 26 at 14.) Det. Tiller then removed Defendant's backpack and placed it on the ground, did a pat-down search of Defendant, handcuffed him, and

7

put him in his vehicle, all precautions taken due to valid safety concerns. *Id*. at 14-16. At this point it was approximately 8:07 p.m., only nine minutes after the initial stop. *Id*. at 15. Det. Tiller then ran another MULES search using Defendant's social security number, discovered an active warrant, confirmed with dispatch that the warrant was active, and placed Defendant under arrest at 8:14 p.m., only 16 minutes after the stop ensued. *Id*. at 17-18. Defendant contends that these actions were unreasonable. However, the undersigned disagrees, as officers are allowed to take "negligible burdensome precautions" to complete a traffic stop safely. *See Rodriguez*, 575 U.S. at 354; *Cloud*, 594 F.3d at 1044-45 (finding if complications arise when identifying the passenger, the officer may reasonably prolong their detention to identify them).

Here, Det. Tiller witnessed Defendant leaving the scene of a traffic stop carrying a backpack. Because of this, Det. Tiller's attention was now split between the driver and Defendant, near nightfall, in a higher crime area. Under these circumstances, Det. Tiller was justified in suspecting that Defendant was potentially dangerous. *See Plummer*, 409 F.3d at 909 (finding a protective search will be held valid "if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous." If Det. Tiller had allowed Defendant to leave the scene of the traffic stop, he could have returned to harm Det. Tiller. *See United States v. Oliver*, 550 F.3d 734, 738 (8th Cir. 2008) (finding if an individual is allowed to leave the scene without a pat-down search, the individual could be armed and dangerous and could turn around and shoot the officer). Det. Tiller articulated that his reason for these actions was his safety. (Doc. 26 at 15.) Considering that pat-downs are "minimally intrusive" compared to the dangers faced by officers, the undersigned finds that Det. Tiller acted justifiably in conducting a pat-down search of Defendant. *See Menard*, 95 F.3d at 11 (holding that pat-downs are "minimally intrusive" compared to the hazards officers face during traffic encounters). Further, the undersigned finds that placing

8

Defendant in handcuffs and then into the patrol vehicle was also not unreasonable under these circumstances. *See Navarrete-Barron*, 192 F.3d at 790-91 (finding that handcuffing a passenger and placing them in an officer's vehicle for safety reasons and to control the scene is reasonable during a traffic stop).

The undersigned also disagrees with Defendant's briefly stated contention that Det. Tiller unlawfully seized his backpack by removing it and placing it on the ground prior to handcuffing him. Not every interference with personal property is a seizure under the Fourth Amendment. At most, Det. Tiller's removal of Defendant's backpack would be an "inconsequential interference" not covered by the Fourth Amendment. *See United States v. Va Lerie*, 424 F.3d at 706-07 (finding that officers moving an individual's package at an airport was not a meaningful interference protected under the Fourth Amendment).

Lastly, the undersigned finds that Det. Tiller acted diligently throughout the traffic stop, considering all of the tasks he completed during the 16 minutes that passed from the time the truck was stopped to time of Defendant's arrest. *See Decker*, 767 F.3d at 741 (finding that courts should consider whether officers acted diligently when conducting their investigation). Ultimately, the undersigned concludes that Defendant's Fourth Amendment rights against unreasonable seizures were not violated, and as to this basis, the motion should be denied.

### B. Defendant's Pre-*Miranda* Statements Should Not Be Suppressed

The Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Thus, "an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* requires that warnings must "be issued prior to questioning whenever a suspect

9

is (1) interrogated (2) while in custody." *United States v. Cowan*, 674 F.3d 947, 957 (8th Cir. 2012) (internal quotation omitted) (emphasis in original).

1. **Defendant Was Not "In Custody" Prior to the Formal Arrest**

The "central principle" of *Miranda* states "if the police take a suspect into custody and then ask him questions without informing him of the rights enumerated above, his responses cannot be introduced into evidence to establish his guilt." *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). However, "persons temporarily detained pursuant to [ordinary traffic] stops are not 'in custody' for the purposes of *Miranda*." *Id. at* 440. The Supreme Court reasoned that there are two features of ordinary traffic stops that mitigate the danger that a person questioned will "speak where he would not otherwise do so freely." *Id*. at 437 (quoting *Miranda*, 384 U.S. at 467). First, the detention during a traffic stop is "presumptively temporary and brief" and second, "the circumstances associated with a typical traffic stop are not such that the motorist feels completely at the mercy of police." *Id*. at 437-38.

Defendant contends that from the moment he was directed to return to the truck and handcuffed by Det. Tiller, he was in custody as contemplated by *Miranda*. (Doc. 18 at 9.) The undersigned disagrees, as nothing in the record indicates that Defendant should have been given *Miranda* warnings prior to his formal arrest. The traffic stop lasted only 16 minutes, with only seven of those minutes passing from the point Det. Tiller handcuffed Defendant and placed him in his vehicle to the arrest. S*ee United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1998) (a 20-minute detention to verify that a warrant was active did not violate the Fourth Amendment). As discussed extensively above, during those 16 minutes, Det. Tiller acted diligently to complete the purpose of the stop by asking the driver and Defendant a moderate number of questions to determine their

identities and to try to obtain information confirming or dispelling his suspicions. Accordingly, the traffic stop was "temporary and brief."

Second, as discussed above, although Det. Tiller handcuffed Defendant and placed him in his vehicle, he did so for valid safety reasons while he finished confirming Defendant's identity to determine whether there was a warrant for his arrest. *See Navarrete-Barron*, 192 F.3d at 790-91(finding that handcuffing a passenger and placing them in an officer's vehicle for safety reasons and to control the scene is reasonable during a traffic stop); *United States v. Rodriguez*, 711 F.3d 928, 935 (8th Cir. 2013) (asking a suspect to step out of a vehicle and placing him in handcuffs while investigating his identity during a traffic stop was not the equivalent of a formal arrest for *Miranda* purposes). Also, these events took place on a public street and in the presence of the driver. *See Berkemer*, 468 U.S. at 438 (finding that typical traffic stops are public to a certain extent, as a passerby in a car or on foot could see the interaction between individuals and officers). At no point prior to the arrest did Det. Tiller advise Defendant that his detention would not be temporary. And, although he was not obligated to respond to Det. Tiller's brief questions regarding his identity, Defendant did so voluntarily, with no evidence to the contrary. Lastly, Defendant's answers led to the discovery of an active warrant which led to Defendant's arrest. In short, the undersigned finds that Det. Tiller's treatment of Defendant was in line with that of a typical traffic stop and does not find that Defendant would have felt he was "completely at the mercy of police."

In summary, the undersigned finds that the traffic stop was temporary and brief, and that Defendant could not have reasonably felt at the mercy of Det. Tiller. *See Berkemer*, 468 U.S. at 437-38 (holding temporary and brief traffic stops that don't make an individual feel at the mercy of police, mitigate the danger that a person questioned will "speak where he would not otherwise do so freely," thus not requiring *Miranda* warnings before asking routine questions). As a result,

Defendant was not taken into custody for the purposes of *Miranda* until Det. Tiller formally arrested him, and any statements he made prior to that point are admissible against him.

### 2. The Public Safety Exception Applies

Additionally, a suspect's answers to questions may be admitted into court absent *Miranda* warnings if those questions fall under the "public safety exception." *New York v. Quarles*, 467 U.S. 649, 655 (1984). The public safety exception allows officers to ask an arrested suspect if they have weapons or contraband in a place officers will search, based on the risk to officers handling unknown firearms or drugs. *United States v. Liddell*, 517 F.3d 1007, 1009-1010 (8th Cir. 2008). This exception applies even when officers are the only ones in peril. *Quarles*, 467 U.S. at 656. *See also United States v. Brooks*, 389 F. Supp. 3d 619, 628 (W.D. Mo. 2019), aff'd, 982 F.3d 1177 (8th Cir. 2020) (holding that an officer asking a suspect if they had any "guns or weapons" was covered under the public safety exception). However, this exception does not apply where the questions are designed "solely to elicit testimonial evidence from a suspect." *Id*. at 659.

Here, the undersigned does find that Defendant was in custody for purposes of *Miranda* when Det. Tiller asked him, "if he had any weapons or anything illegal in the backpack." This is primarily because Det. Tiller placed Defendant under arrest before asking Defendant the question. (Doc. 26 at 18.) Even so, the undersigned finds that the public safety exception prevents the suppression of the evidence, as Det. Tiller asked the question at issue for officer safety reasons. *Id*. at 15.

This case closely resembles *United States v. Liddell*, 517 F.3d 1007, 1009-1010 (8th Cir. 2008). In *Liddell*, the defendant was arrested and, while officers searched his car, they discovered a .38 caliber revolver under the front seat. When the officers asked him if there was "anything else" in the car "that's gonna hurt us," the defendant answered that he knew the .38 caliber revolver

was in his car. The court held that the question fell under the public safety exception because the risk to officers in handling unknown firearms or drugs provides a basis to ask an arrested suspect if they have weapons or contraband in a place officers will search.

Here, Det. Tiller explained that if something hazardous such as a firearm or drugs, some of which can explode (such as methamphetamine manufacturing equipment), are present, he would like to know before placing it in his vehicle. (Doc. 26 at 19.) Furthermore, Det. Tiller showed throughout the traffic stop that his safety was of high priority to him. His reasonable actions included removing the backpack from Defendant's reach, performing a pat-down search of him, handcuffing him, and objecting to him leaving the scene of the traffic stop, all evidencing his safety concerns.

Considering all of the relevant factors in this case and in light of the applicable case law, the undersigned finds that Det. Tiller's question regarding whether the Defendant had any weapons or anything illegal in his backpack fell under the public safety exception. Consequently, the undersigned finds that Defendant's pre-*Miranda* statement regarding the contents of the backpack should not be suppressed.

C. **Conclusions**

In summary, first, the undersigned concludes that Det. Tiller did not prolong the stop in violation of Defendant's Fourth Amendment rights to be free of unreasonable searches and seizures. Det. Tiller's efforts to learn Defendant's identity during the 16-minute traffic stop were allowed as ordinary inquiries incident to the stop and were performed diligently. Also, Det. Tiller took appropriate officer safety measures for valid reasons by directing Defendant to return to the stop, removing his backpack, conducting a pat-down search of him, handcuffing him, and placing

him in his vehicle. Accordingly, the undersigned finds that Defendant's Fourth Amendment rights were not violated.

Next, as to the challenge to any pre-*Miranda* statements made by Defendant, the undersigned finds that until Defendant was formally arrested, Det. Tiller was not required to Mirandize him, as the encounter was a routine traffic stop and not a custodial interrogation for purposes of *Miranda*. Further, although Defendant was in custody when Det. Tiller asked him if he had any weapons in the backpack, this question is allowed under the "public safety exception, and as a result, Defendant's answer should not be suppressed. Accordingly, the undersigned finds that Defendant's Fifth Amendment rights were not violated.

### III. Recommendation

Therefore, based on the foregoing, the undersigned hereby **RECOMMENDS** that the Motion for Suppression of Physical Evidence and Statements be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: August 10, 2022